Your Honors, may it please the Court. I'm Dan Rhodes for the Appellant. And the reason this suit was brought is that G.S. was excluded from his public high school for acting on his disabilities. And so this case is primarily about discrimination and access to a public institution. The District Court dismissed the case in its entirety under the Exhaustion Clause of the IDEA, but that dismissal was an error for reasons regarding the plain text of the statute, recent Supreme Court precedent, and Rockwood's status as a component district under Missouri law. The plain text of the Exhaustion Clause begins by saying that the IDEA does not restrict or limit rights and remedies available under the Constitution, Rehabilitation Act, and other federal laws. And then the Exhaustion Phrase talks about actions seeking relief that is also available under the IDEA. And Counts 1, 3, and 5 of the complaint seek compensatory damages under Section 504. What was the discrimination? I mean, of course, you're accused of making it up or adding it on appeal with facts that were not in the record on appeal. But just plainly stated, what was the non-educational discriminatory access that was denied? So I think the answer to that is in paragraph 35 of the complaint, which is on page 6 of the joint appendix, which is that excluding GS from the high school due to conduct that was caused by or had a direct and substantial relationship to his disability constituted disability discrimination in violation of Section 504. And this perhaps is where the clue that the Frey opinion gives at the end in the form of those two hypotheticals is helpful. So those hypos are, you know, could the student have brought a similar claim against a public entity other than a school, and could an adult have brought a similar claim? And if GS had been, for example, at a public library that had notice of his disabilities of autism and Tourette syndrome, he had said something sort of off the wall that someone regarded as a threat, but the library understood it to be related to his disability, could the library have barred GS from its premises for six months? And I think a 504 claim would sound under those facts. I also think if you have an adult, say, the parent of a student who was on campus for a legitimate reason, again, the school has noticed that this parent has disabilities, including autism and Tourette syndrome. The parent says something off the wall. What was alleged was the denial of IDEA procedures. I'm sorry, Judge? What was alleged was the denial of IDEA procedures. What is alleged is that he was suspended from school and that a long-term suspension was imposed, notwithstanding the finding that his conduct was related to his disability. What you're telling me here outside of IDEA is that Goss v. Lopez was complied with. Goss v. Lopez was complied with. That means that the ADA discrimination could have been determined through Goss v. Lopez procedures that the plaintiff did not choose to pursue. I think that Goss v. Lopez was about the right to procedural due process. And we do not allege a constitutional-level violation of due process. What we're alleging is that by barring him from school for six months because of conduct related to his disability. But there was a hearing offered for that, maybe even performed. And the disability discrimination certainly could, the hearing contemplated by Goss v. Lopez would certainly include the opportunity to present that. I don't know if it's a defense or a claim. You can't do a long-term suspension on account of a physical disability. And you're right about that, Judge Loken. So it was inserting the IEP team's procedural remedies that was the core of this lawsuit. Well, I think the core of the lawsuit is that this student was barred from school for conduct related to his disability. And that's just not an issue that Goss v. Lopez really addresses. And to the point about seeking remedies for the denial of faith, it's the… Goss v. Lopez was procedural due process. Correct. Your claim is that IDEA procedural due process was denied. In counts two and four. So count five, which is the 1983 claim, alleges violations of federal law and the Constitution. The 14th Amendment sort of right in the Constitution is to be free from discrimination on the basis of disability. It's not a procedural due process right that my client's trying to vindicate in this lawsuit. You're talking so fast I can't hear. I apologize, Judge Loken. The procedural due process right is not at issue in this case. It's simply the issue of disability discrimination. No, but the ability to be heard on the ADA discrimination is part of what Goss v. Lopez contemplates public schools will do before you do a long-term suspension. So here, that wasn't pursued because plaintiffs learned that, well, the IEP team said that the IDEA trumps that process. And that's the relief we should have had. And so, therefore, that's our claim for damages. That, it seems to me, gets to the core of the test under, what, Fry? And certainly our cases, like JM. Yes, Judge, but what distinguishes this case from JM is that a case like JM, the student alleged that the isolation in that case was not permitted by his IEP. And so I think this court said that that was an IEP issue. You allege this suspension was not permitted by the IEP. There's no allegation in the complaint that his IEP was, that the services he got while he was on suspension were inadequate under his IEP. To the extent, yes, Judge? You can't say that. The IEP team says you can't do a long-term suspension. You have to, you know, bring him back with whatever accommodations we say are required by the IEP as amended or put him in a new placement. Correct, and they did not do that. Denial of those remedies are the core of the claim now for damages. Having walked away from pursuing the IDEA remedies, we get damages instead because you didn't give us the IDEA procedures and remedies. Well, respectfully, Judge Loken, we did not walk away from the IDEA remedies. Those were sought and pursued at the administrative level against the special school district, which is the public agency responsible for answering the due process complaint. That's the other issue. Correct, correct. And so the strictest rule would be to say that the special district is then liable for all the conduct of Rockwood such that it, you know, pays any expenses that were incurred because of the suspension. But even under that rule, I think that only disposes of Counts 2 and 4 of the complaint, and the counts under Section 504 in 1983 still survive under FRI. And so the point is that any time a student with an IEP is suing for disability discrimination, the IDEA will loom to some degree. But to subject all of those cases to exhaustion would be to follow the rule that the Supreme Court rejected in FRI. And perhaps more importantly, it would be contrary to the intent of Congress when it wrote the exhaustion clause into the... Which of our cases are wrong under FRI? I'm sorry? Which of our cases are wrong under FRI? I'm not asking the court... We've had multiple IDEA exhaustion cases in which we've concluded exhaustion was required, some before, some after FRI. I'm aware, Judge Loken. Which of those, in your view, were overruled by FRI? I'm not submitting that any of them were overruled under FRI. I think that the rule in JB is maybe, as interpreted by this court in Moore, might have been superseded by the rule in FRI. But the intent of Congress was to... I thought JB was post-FRI. JB was pre-FRI, Your Honor. This is 2013. I'm referring to JB versus Avila. I'm talking... JM. I'm talking JM. JM, correct. And JM, again... JB is my decision, yeah. Okay, I apologize. JM followed JB. Correct. And JM followed FRI. But, again, JM was about the provisions of the student's IEP. And our claim here is that the IEP itself was not inadequate during the suspension. It was the fact that he was barred altogether from campus. So I'd like to just reserve the remainder of my time. Thank you. Thank you, Mr. Rhodes. Mr. Watzak. Mr. Watzak. Thank you, Your Honor. Good morning. My name is Larry Watzak. I'm here on behalf of the Rockwood School District and Dr. Eric Knost, its superintendent. Regarding the two questions that FRI gave us to determine whether or not a complaint seeks relief for the denial of FAPE, I'd like to go through a couple of the paragraphs of the complaint just to show that when you ask yourself those two questions, they both come up no. It started out with the suspension of the principal suspended the student for 10 days. His IEP team then conducted a manifestation determination hearing. Can you tell us the paragraph? If you're reading from a paragraph, it will help us to... The joint appendix of page 3, Your Honor. The manifestation determination was by his IEP team that the behavior was caused by or had a direct relationship to his disability. That's at joint appendix 3. According to the complaint, under the IDEA, at the time of this determination, he should have been given the opportunity either to return to school or to change his placement. That also is at joint appendix page 3. The complaint claims that special school district in Rockwood did not give him these options and instead kept him on an out-of-school suspension. It's the same site, sir. Then the complaint goes on to allege that the failure to return GS to school following the manifestation determination was noncompliance with the IDEA. That's at joint appendix page 5. Rockwood's conduct constituted a procedural and substantive violation of the IDEA in that they refused to allow him to return to school. What about paragraph 35 that counsel argued? I don't know what it was, Your Honor. Paragraph 35 of the complaint. The counsel, I think, read he was excluded from school because of his disability. Does it say that? I didn't bring the appendix. The word discrimination appears in the complaint three times, but I would go back to what Fry said when he said, discount artful pleading and take substance over surface. If you look at the complaint in totality, the whole core of the case is because the IEP team made a determination that his alleged misconduct was related to his disability, and then the allegations are followed that Rockwood did not follow the IDEA. It's nothing about discrimination except it is the word discrimination is named three times in there, but the core of this is about the IDEA, IEP, and the failure to provide a fate after he was removed from school, contrary to the instructions of his IEP team. I'd also like to spend just a few minutes on the futility argument that he raises where Rockwood was not a proper party to exhaust his administrative remedies against. He's appellant cites to 162890 and claims that Missouri law gives all responsibility for providing a fate to special school districts. That's in his brief at page 16. I think that's too broad of a reading of 162890. When I read 162890, I see that it relieves component districts such as Rockwood from providing special education classes once a special school district is established. It doesn't necessarily take away, take Rockwood out of the picture of providing fate in any sense of the word. The appellant further claims that naming, he could not name Rockwood because naming a component district would have resulted in summary dismissal. Let me just stop. As a practical matter, in St. Louis County, which apparently has this dichotomy that other counties don't, how are parents advised to pursue their administrative IDEA rights? Are they told that you can't sue the component district, you can only sue the special district, or are they told nothing at all so they get no advice? You make the point in your brief that, well, if they had gotten administrative relief in the claim against the special district, obviously the component district would have been involved. That seems clearly true. Are the parents helped? Are they given any guidance as to how to pursue their IDEA rights, state administrative rights in this complex situation? I know we've been named in administrative hearings for due process complaints as a component district. Is that in the record anywhere? Yes, sir. In this record? Yes. No, sir. Is there anything in the record that clarifies that parents aren't left in the dark as to what to do with this situation where you've got two different educational districts pointing the fingers at each other or maybe not? It seems to me, Judge, the IEP team is made up of Rockwood and the special school district, that it would be normal to name both districts. Is that in the record, the membership? No, sir. But it also appears to me, to take the other side of it, it seems speculative to say we didn't name Rockwood because we would have been dismissed. We'll never know whether Rockwood would have been dismissed. And we couldn't name Rockwood because it could have invoked sanctions on us, but they weren't named, so we don't know. It's all speculative, Judge. And the Missouri plan is clear that it's a joint responsibility to educate special education children. If you look at the regulation at Roman numeral 15B, it says, although the special school district may have primary responsibility to develop policy in these areas, implementation shall be the joint responsibility of the special and component districts. This is required because for most students with disabilities, special education services are provided in a general education setting, and that would be consistent with the IDEA's definition of FAPE, which doesn't only limit it to special education services, it comprises special education and related services. So Rockwood does have a role in providing services to special education students. I'm going to have to cover one more topic if I have time, and that is the argument that he could not have sought relief at the administrative level because all the remedies weren't available to him. And in JM, that was discounted. Also the same for money damages. Money damages doesn't justify not... Was there a settlement of the administrative? It was dismissed before there was a ruling by the hearing officer. It was settled, yes, sir. All right. Are the terms of the settlement in the record? They're not in the record, Judge, the terms. The only record is the complaint, the motion to dismiss, and the judge's dismissal memorandum. But Judge Jackson noted that the settlement... You see, if we had in the record what the terms of the settlement were, we would know whether Rockford, if there was relief granted, whether Rockford was a participant in the settlement implementation, and we'd know a lot more about what the exhaustion was or wasn't. Rockwood didn't participate in the settlement. That's in the complaint, and it's in our motion. Well, all right. Did they just walk away because they thought it was more fun to sue for damages, or did the special school district provide them some IDEA relief? No, we weren't... Yeah, so you've got us flying blind, as usual, in a Rule 12b-6 dismissal. The district court concluded that the plaintiff didn't exhaust the administrative remedies as to any party because it's a settlement, not a decision by the Administrative Hearing Commission. If there are no further questions, I would ask the court to affirm Judge Jackson's dismissal. Well, I have a... What if... What if they had... Did they pursue the remedy... The 10-day supervision, Gosphy-Lopez requires a hearing, school district due process hearing, independent of 504 or anything else, before you can do a long-term suspension. Was that held? Was there such a hearing? The 10-day hearing? Yeah. Yes. And was there any claim that this is all attributable to disability, and therefore, if you exclude him from school, you're violating the ADA? The complaint... Do we know from the record? The complaint says that the IEP team concluded that his disability was the cause or related to his behavior. Yeah, the complaint in this case, but I'm talking about the... When they went to the principal and said, don't do a long-term suspension, they didn't yet know what the... Mother didn't know what the IEP team had done. Right. There was a hearing... Mother pursued whatever remedies. What remedies were pursued? Do we know? There was a 180-day suspension, according to the complaint. Well, I assume that was contested to the extent... It wasn't contested. Pardon? It was not contested. So there wasn't a hearing? Yes, there was a hearing. What was the hearing? What happened? All the record says is that there was a 180-day suspension imposed. But we don't know what the objection to the long-term suspension was. Is that correct? Correct. What a terrible record. Counsel, your time has expired. Thank you, Judge. Thank you. Mr. Rhodes, your rebuttal. Thank you, Judge Smith. And Judge Loken, paragraph 28 of the complaint says, plaintiff and the special school district agreed on a resolution of the issues regarding GS's educational placement and the provision of special education and related services going forward. And the due process complaint was voluntarily dismissed. So the IDEA remedies... But Rockford had to be... If any of those services were to be provided by Rockford, they had to be at least behind the scenes a participant in the settlement. Well, it's not in the record, but that's... Bound by the settlement. That's... He was placed in an SSD school, Judge. It's not in the record, though, but that's why... Pardon? He was placed in an SSD school. That's why Rockford was not... But that's not in the record. But the point is that the IDEA remedies were pursued and that when those were resolved between GS and the special school district, that was over. In this case, only seeks relief that was not available in those proceedings. And that relief, again, was? A new placement for him and then a new IEP in light of his new placement. But at bottom, what was the substance of the complaint? Of the due process complaint? Well, of the 28... The complaint you referred to, ultimately was this mother-seeking... Free appropriate public education for her child or not? Yes, and she got that in the due... After filing a due process complaint against special school district, she got that with respect to his placement of services going forward from SSD. In this case, only addresses the things that could not have been addressed in the Administrative Hearing Commission. Well, you say they couldn't have been addressed. They could have been addressed if you had joined the Rockford in the complaint. It's actually, as a legal and practical matter, Rockwood cannot be a respondent in a due process complaint. You could say that, but counsel just said they have been participants. What Mr. Wodczak said is that they had been named. Anybody can name anybody as a respondent in something. What he did not say is that they've ever been bound or gone through a hearing. If you don't name them, you haven't exhausted. Exhaustion doesn't mean you won. Regulation 9 part 3D5 says that only the special school district can participate in the due process hearing, and I think that's quoted in the district court's memorandum, which is in the record. So I ask that this court reverse the dismissal. Thank you, Your Honors, for your time. Thank you, Mr. Rhodes. Thank you also, Mr. Wodczak. The court appreciates the argument you provided to the court this morning and the briefing that you have submitted. We'll take the case under advisement.